**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: January 07 2011**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 10-33942 |
| | ) | |
| Brooks A. Jordan, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 10-3195 |
| | ) | |
| Brooks A. Jordan, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ACS Education Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OF DECISION AND ORDER
### ON MOTION FOR DEFAULT JUDGMENT

This adversary proceeding is before the court upon Plaintiff's complaint to determine the dischargeability of debt under 11 U.S.C. § 523(a)(8) ("Complaint") [Doc. #1]. Plaintiff is the debtor in voluntary Chapter 7 Case No. 10-33942 pending in this court. The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in a case under Title 11.

This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

On July 7, 2010, the Clerk issued a summons and notice of pre-trial conference ("Summons")[Doc. # 2]. The return on service [Doc. # 3] shows that the Summons and Complaint were duly and properly served on Defendant, sent to the address set forth in Plaintiff's petition by certified United States Mail. The Summons required an answer or other response to the Complaint to be filed by August 6, 2010.

On August 24, 2010, the court held the initial pre-trial scheduling conference on the Complaint as set in the Summons. Plaintiff's attorney appeared by telephone. There was no appearance by or on behalf of Defendant and no answer or other response to the Complaint had been filed. The Clerk entered Defendant's default, [Doc. # 6], and Plaintiff filed a Motion for Default Judgment ("Motion") on September 6, 2010 [Doc. # 9]. The court scheduled a hearing on the Motion and notice of this hearing was also properly served on Defendant at the address set forth in Plaintiff's petition. [Doc. ##10, 11].

On October 19, 2010, the court held the hearing on the Motion. An Attorney for Plaintiff appeared in person. There was no appearance by or on behalf of Defendant. Plaintiff offered testimony and other evidence in support of the Motion. A review of the record shows that no answer or other response to the Complaint or Motion has been filed.

## FINDINGS OF FACT

The court finds that notice, including the service of the Summons and Complaint and of the hearing on the Motion, has properly been given to Defendant. Service of the Summons and Complaint was duly and properly effected under Rule 7004(h) of the Federal Rules of Bankruptcy Procedure. In further support that actual notice of these proceedings have been received by Defendant, the court notes that no notices or mailings to Defendant from the court have been returned to the Clerk. Thus, the court finds that Defendant has failed to appear, plead, or otherwise defend this action as required by the applicable rules of procedure.

The well-pleaded factual allegations of the Complaint are taken as true as a result of the default. In addition, the court takes judicial notice of the contents of the docket in Debtor's underlying bankruptcy case, including Debtor's bankruptcy schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own

records of litigation closely related to the case before it). The court has also considered Plaintiff's testimony and documentary evidence offered at the hearing, which further support allegations in the Complaint.

Plaintiff is twenty-seven years old and is single with no dependents. She incurred student loans while pursuing a bachelors degree in education at Heidelberg College, which she obtained in 2006. Plaintiff testified that her loans were obtained from a private lender and are not guaranteed under any federal program. After graduating, Plaintiff consolidated her student loan debt owed to Defendant. As of June 30, 2010, the outstanding principal balance of that thirty-five-year consolidation loan was $93,776.58, with interest that is accruing at an annual rate of 9.04%. [Pl. Ex. A].

Initially, Plaintiff's monthly payment owed to Defendant was $747. She made those payments until a few months before filing her bankruptcy petition. After graduating from college and during the time that she was making her monthly student loan payments, she was living with her parents. She worked for one year in a daycare after graduating and then obtained a position as a first grade teacher in the Swanton, Ohio, school district, where she has taught for two years. She now lives independently. She received a three-month deferment in making her payments and thereafter was notified that her monthly payment has increased to $776 per month. Plaintiff has repeatedly contacted Defendant in an attempt to address her difficulty in meeting her payment obligation. Although she was offered an additional three-month deferral period, interest will continue to accrue and her monthly payment will increase. Plaintiff has been unable to refinance this obligation.

Plaintiff's bankruptcy Schedule I shows that her gross monthly income is $2,861.00, and her net income after payroll deductions is $1,961.55. [Case No. 10-33942, Doc. 1, Schedule I]. This amount reflects Plaintiff's teaching salary that is paid over a period of twelve months. Plaintiff alleges in the Complaint, and testified at the hearing, that she anticipates only cost of living increases throughout her teaching career to the extent that the public school system can afford such increases. She further alleges in the Complaint that she is maximizing her income. To that end, Plaintiff testified that she has sought additional work to supplement her teaching income. Plaintiff testified that she applied for and recently obtained an information technology position with Swanton schools, for which she will be paid a lump sum net amount of approximately $1,000. Other sources of income include net amounts of approximately $2,000 for coaching volleyball and $600 for working at a kindergarten camp during the summer. In addition, Plaintiff is attempting to earn extra money by tutoring students. Plaintiff's additional net income totals approximately $3,600, for an average of approximately $300 per month. Thus, her total income after payroll

3

deductions is now approximately $2,261.

Plaintiff's Schedule J shows total monthly expenses, including her original student monthly loan payment owed to Defendant, in the amount of $2,609.76. [*Id.*, Schedule J]. The recent $29 increase in her student loan payment results in total monthly expenses in the amount of $2,638. Plaintiff's other monthly expenses reflect a very basic lifestyle. Her total income less total monthly expenses is a negative $377.00.

Plaintiff filed her Chapter 7 petition on June 7, 2010. She testified that her primary purpose in filing was to deal with the student loan debt owed to Defendant. This testimony is corroborated by Plaintiff's Schedule F, which shows that all but $552 of her $112,115 in unsecured debt is student loan debt. Plaintiff has no non-exempt assets that could be used to pay her student loans. On May 15, 2009, she commenced this adversary proceeding seeking a discharge of her student loan debt as an undue hardship. At the hearing on Plaintiff's motion for default judgment, she made clear that she is not seeking a discharge of the entire debt but, rather, is seeking such relief as will allow her to pay an amount that she can afford while maintaining a basic standard of living.

## LAW AND ANALYSIS

### I. General Principles

Section 523(a)(8) provides for the dischargeability of a student loan obligation if "excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents. . . ." The underlying purpose of this provision is "to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans." *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436-37 (6th Cir. 1998).

Although the Bankruptcy Code does not define "undue hardship," the Sixth Circuit has adopted the test set forth in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987), for determining the existence of "*undue* hardship." *See Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir. 2005).

Under the *Brunner* test, the debtor must prove each of the following three elements:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

4

*Id.* at 385 (quoting *Brunner*, 831 F.2d at 396). In applying the three prongs of *Brunner,* courts may consider, among other things, the following factors:

> (1) the debt amount; (2) the interest rate; (3) the debtor's claimed expenses and current standard of living to evaluate whether the debtor has attempted to minimize expenses; (4) the debtor's income, earning ability, health, education, dependents, age, wealth, and professional degrees; and (5) whether the debtor has attempted to maximize income by seeking or obtaining employment commensurate with her education and abilities."[1]

*Id*.

A debtor seeking an undue hardship discharge bears the burden of proof by a preponderance of the evidence. *Chime v. Suntech Student Loan (In re Chime)*, 296 B.R. 439, 443 (Bankr. N.D. Ohio 2003). But in cases in which a debtor fails to establish an undue hardship justifying the exception of her entire debt, under *Hornsby*, *Cheesman v. Tenn. Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir. 1994), and *Miller v. Penn. Higher Educ. Assistance Agency (In re Miller),* 377 F.3d 616 (6th Cir. 2004), the court must take one further step. In *Cheesman*, the Sixth Circuit authorized trial courts to evaluate undue hardship under § 523(a)(8) in light of and in conjunction with 11 U.S.C. § 105(a). *Cheesman*, 25 F.3d at 360-61. In *Hornsby*, the Sixth Court appears to require trial courts to undertake such an analysis. *Hornsby*, 144 F.3d at 440 (reversing decision granting a total discharge of student loan debt and remanding for consideration of a partial remedy under § 105(a)). In *Miller*, the Sixth Circuit made clear that a partial remedy granted pursuant to the equitable powers of § 105(a) does not eliminate the requirement of undue hardship. *Miller*, 377 F.3d at 622. Section 105(a) authorizes a court to grant a partial discharge only where the undue hardship requirement of § 523(a)(8) is met as to the part discharged. *Id.*

For the reasons discussed below, the court finds that the well-pleaded factual allegations of the Complaint constitute a valid cause of action against Defendant under § 523(a)(8). Having considered Plaintiff's testimony and other evidence offered at the hearing, the court finds an undue hardship as to only a portion of Plaintiff's student loan debt and further finds it appropriate to exercise the court's authority under § 105(a) to grant a partial discharge of that portion.

## II. First Prong of the *Brunner* Test

The first prong of the *Brunner* test contemplates that a debtor is first entitled to provide for basic

---

[1] Before the *Oyler* decision, the Sixth Circuit treated these factors as distinct and independent from the *Brunner* analysis. *See, e.g., Hornsby*, 144 F.3d at 437. But in *Oyler*, the court recognized that the *Brunner* analysis "subsumes" the criteria it had previously analyzed independently and formally adopted the "simpler rubric of the *Brunner* test." *Oyler*, 397 F.3d at 385.

10-03195-maw    Doc 14    FILED 01/07/11    ENTERED 01/07/11 13:05:16    Page 5 of 13

needs for food, clothing, shelter, medical care and transportation for herself and her dependents, if any, before repaying student loan debts. In applying this test, the court must evaluate a debtor's household income and expenses, focusing particularly on what expenses are necessary to realistically maintain a basic standard of living and then determining whether there is income left over with which to pay student loan debts.

As discussed above, Plaintiff's average monthly income after payroll deductions is $2,261. Although Plaintiff's monthly expenses reflect a very basic standard of living, with the $776 monthly payment owed to Defendant included in those expenses, she experiences an average monthly shortfall of $377. Without the $776 monthly payment being made to Defendant, Plaintiff's average monthly income exceeds her expenses by $399. Applying this entire amount to her student loan debt would appear to leave no cushion for emergencies and unexpected expenses. Thus, budgeting $49 per month for such expenses, the court finds that $350 per month is available to Plaintiff to pay on her student loan debt owed to Defendant.

Another aspect of the first prong of the *Brunner* test is the impact of forced collection of the student loan debt on a debtor and her dependents. This prong of the test, explicitly adopted by the Sixth Circuit in *Miller,* was in fact phrased by the Second Circuit in *Brunner* in terms of whether the debtor could maintain a minimal standard of living if "forced" to repay the loans in issue. *Brunner*, 831 F.2d at 396. The court interprets this language as requiring an analysis of the effect on the debtor's standard of living if the holder or guarantor of the student loan takes legal action resulting in Plaintiff's involuntary payment of her loans. Because she has no nonexempt assets that could be liquidated on execution pursuant to any future judgment obtained by Defendant, her property will not be seized. She does, however, have earnings that can be garnished. Under the Consumer Credit Protection Act and Ohio law, garnishment is limited to 25% of her disposable earnings,[2] which are defined as earnings of an individual after deduction of amounts required

---

[2] The statutory garnishment limitations are expressed in the alternative. Under Ohio law and the federal Consumer Credit Protection Act, the maximum amount of a judgment debtor's disposable earnings subject to garnishment is the *lesser* of (1) 25% of disposable earnings or (2) the amount by which disposable earnings exceed a periodic multiplier times 30 times the minimum wage (4 1/3 [monthly calculation multiplier] x 30 x $5.85 [current minimum wage]). Ohio Rev. Code § 2329.66(A)(13)(a); 15 U.S.C. § 1673; 29 C.F.R. § 870.10. As explained further below, Plaintiff's monthly disposable earnings for garnishment purposes are $2,261. This amount exceeds the minimum wage multiplier amount ($760.50) by $1,500.50. However, only 25% of Plaintiff's disposable earnings, or $565.25 (25% x $2,261), would be subject to post-judgment garnishment since this is the lesser of the two calculations.

6

by law to be withheld.[3]  15 U.S.C. §§ 1672 and 1673; Ohio Rev. Code § 2329.66(A)(13) and (C)(1).[4]  Plaintiff's net monthly income after payroll deductions averages approximately $2,261.  At this level of income, garnishment would reduce Plaintiff's pay by at least $565.  The court finds that such a reduction would not only render Plaintiff unable to maintain a basic standard of living but would be insufficient to cover even the monthly interest accruing on the debt in the amount of approximately $706.

Plaintiff's financial condition thus presents a situation in which she has $350 of excess monthly income that could be applied towards payment of her student loan debt while still allowing her to maintain a basic standard of living.  This is true whether there is a forced repayment of the entire debt or some smaller portion of that debt since 25% of Plaintiff's disposable earnings under state law, or $565, could be garnished, regardless of the amount owed, until full payment has been obtained.  Consequently, if "forced" to repay the entire debt or even some smaller portion of the debt, Plaintiff will be unable to maintain a basic standard of living during the repayment period.

Under these facts, strictly applying the first prong of the *Brunner* test would require a finding that Plaintiff cannot maintain, based on current income and expenses, a minimal standard of living if "forced" to repay any appreciable amount of her student loan debt.  Before the Sixth Circuit's decision in *Oyler,* the court analyzed cases involving the dischargeability of student loan debt under a totality of the circumstances test rather than by strictly applying the three-pronged *Brunner* test.  The effect of forced repayment then was only one factor to be considered.  Because Plaintiff has excess income over her expenses, notwithstanding the effect of forced repayment of a portion of the debt owed, the court would have found that payment of a portion of the debt would still allow her to maintain a basic standard of living and, assuming the second and third prongs of the *Brunner* test are met, that an equitable adjustment of her debt would be appropriate.  The court does not believe the Sixth Circuit intended its decision in *Oyler* to change that result.

Rather, the court believes that *Oyler* must be read in conjunction with the Sixth Circuit's decisions

---

[3] The Higher Education Act's ("HEA") provision for administrative garnishment of disposable pay by the Secretary of Education and limitation on such garnishment to 10% of "disposable pay" is not applicable in this case.  *See* 20 U.S.C. § 1095a(a) (providing that the Secretary "may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment under a repayment agreement with the Secretary. . . ").  This provision applies where loans are held by the Secretary of Education or guaranteed under a federal program.  Plaintiff's loans were obtained from a private lender and are not guaranteed under any federal program.

[4] The Ohio Revised Code defines "disposable earnings" as net earnings after the garnishee has made deductions required by law but excludes deductions ordered for support pursuant to Ohio Rev. Code §§ 3119.80, 3119.81, 3121.02, 3121.03, or 3123.06, none of which are applicable in this case.  *See* Ohio Revised Code § 2329.66(C)(1).

in *Miller* and *Hornsby*. In *Miller*, the court clarified its decision in *Hornsby* and discussed at length when a partial discharge of student loan debt may be appropriate, that is, when a debtor's circumstances constitute undue hardship as to *part* of the debt owed. *Miller*, 377 F.3d at 620-24. Addressing the partial discharge discussion in *Hornsby*, the court explained as follows:

> The limiting condition placed on this discussion – "[w]here a debtor's circumstances do not constitute undue hardship as to part of the debt but repayment of the entire debt would be an undue hardship"-- supports the notion that bankruptcy courts discharge the portion of student loan debt for which payment would impose an undue hardship on the debtor. For example, assume that a debtor owes $100,000 in student loans, and repayment of the full amount would impose undue hardship on the debtor but repayment of $40,000 would not. *Hornsby* indicates that a bankruptcy court would discharge $60,000 of the debt, the amount for which repayment would impose an undue hardship.

*Miller,* 377 at 621. Nothing in *Oyler* indicates that the court was abandoning its instruction and analysis in *Miller*. The *Oyler* decision adopted the "simpler rubric of the *Brunner* test" since the court found that the *Brunner* formulation easily accommodates and subsumes criteria it had previously separately identified to evaluate undue hardship. *Oyler*, 397 F.3d at 385; *Fields v. Sallie Mae Servicing Corp. (In re Fields)*, 326 B.R. 676, 682 (B.A.P. 6th Cir. 2005) (indicating that the so-called "other factors" considered by the Sixth Circuit are now part of the *Brunner* test), *rev'd on other grounds* 286 Fed. App'x 246 (6th Cir. Apr. 5, 2007).

Under circumstances in which the debtor has earnings that may be applied to her student loan debt without rendering her unable to maintain a basic standard of living, the forced repayment portion of the first prong of the *Brunner* analysis must be read in conjunction with the general analysis set forth in *Hornsby* and clarified in *Miller*. To simply defer to the hardship that a *forced* repayment of even a portion of the debt would impose and ignore the debtor's ability to maintain a basic standard of living if she *voluntarily* repays a portion of the debt would render meaningless the Sixth Circuit's direction in *Miller* and *Hornsby* that equitable relief under § 105 is justified when a debtor is clearly able to make some payments but is just as clearly unable to repay the entire obligation as an undue hardship.[5]

Before *Oyler,* courts in the Sixth Circuit at times found equitable adjustment of student loan debt to be appropriate when debtors had a present inability to pay their entire student loan debt but did not satisfy

---

[5] Other examples of circumstances where deferring to the effect of forced repayment would produce results that do not accurately reflect the debtor's ability to repay her student loan debt include situations involving a debtor whose earnings are exempt from collection and who has no non-exempt assets to attach or a debtor whose excess income over expenses may cover the amount of any garnishment of her wages in a forced repayment situation but where her loans are for such large amounts that such forced repayment will not result in payment of the loan principal during her working life.

8

the second or third prong of the *Brunner* test, that is, they failed to show that their financial adversity was likely to persist for a significant portion of the repayment period or that they had made good faith efforts to repay the loans. *See, e.g., Flores v. United States Dept. of Education (In re Flores)*, 282 B.R. 847 (Bankr. N.D. Ohio 2002); *Garybush v. United States Dept. of Education (In re Garybush)*, 265 B.R. 587 (Bankr. S.D. Ohio 2001). Under *Oyler*, however, all three prongs of the *Brunner* test must now be satisfied for the court to find undue hardship. As undue hardship must exist with respect to any part of a student loan debt that is discharged, equitable adjustment of the debt can only come into play under the court's analysis of the first prong of the *Brunner* test.

In this case, Plaintiff has satisfied the first prong of the *Brunner* test with respect to repayment of her entire student loan debt. She cannot, as discussed above, maintain a basic standard of living if she is forced to repay the entire debt. Furthermore, interest is accruing on Plaintiff's student loan debt at a rate of 9.04%, or approximately $8,477 per year. At this rate, and making payments of $350 per month for thirty-five years, which the court estimates to be her remaining working life, Plaintiff will be unable to repay her entire debt.

In accordance with *Hornsby* and *Miller*, in determining whether the first prong of the *Brunner* test has been met with respect to repayment of a portion of the debt, the court finds that the proper inquiry is whether, after providing for her basic needs, Plaintiff is able to allocate any financial resources in repayment of some portion of her debt. *See Grove v. Educational Credit Management Corp. (In re Grove)*, 323 B.R. 216, 223 (Bankr. N.D. Ohio 2005) (stating "[t]he essence of the minimal standard of living requirement 'is that a debtor, after providing for his or her basic needs, may not allocate any of his or her financial resources to the detriment of . . . student loan creditor[s]"). Plaintiff has not satisfied this prong of the *Brunner* test insofar as she is able to apply $350 per month in payment of her student loan debt during her remaining working life.

### III. Second Prong of *Brunner* Test

Under the second prong of the *Brunner* test, a debtor's financial adversity is required to be more than a temporary state of affairs. *Hatfield v. William D. Ford Federal Direct Consolidation Program (In re Hatfield)*, 257 B.R. 575, 582 (Bankr. D. Mont. 2000); *see also Hornsby*, 144 F.3d at 437 ("Courts universally require more than temporary financial adversity. . . "). A debtor must show additional circumstances indicating that her distressed state of financial affairs is likely to persist for a significant portion of the repayment period. *Oyler*, 397 F.3d at 386. "Such circumstances must be indicative of a

9

'certainty of hopelessness, not merely a present inability to fulfill financial commitment.'" *Id.* (citing *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir. 1993)); *Carnduff v. U.S. Dept. of Educ. (In re Carnduff)*, 367 B.R. 120, 129 (B.A.P. 9th Cir. 2007) (equating a "certainty of hopelessness" with a showing of "exceptional circumstances, *strongly suggestive* of continuing inability to repay over an extended period of time). Although a debilitating medical condition is such a circumstance frequently present in successful "undue hardship" cases, it is not a prerequisite to satisfying the second prong of the *Brunner* test. *Chime v. Suntech Student Loan (In re Chime)*, 296 B.R. 439, 445 (Bankr. N.D. Ohio 2003). Other factors that may constitute additional circumstances include, among other things, a maximized income potential in the debtor's chosen educational field and the lack of any more lucrative job skills. *See Oyler*, 397 F.3d at 385 (stating that most courts conceptualize the inquiry regarding a debtor's attempt to maximize income as "the controlling aspect of *Brunner's* second prong"); *Nys v. Educ. Credit Mgmt. Corp.*, 308 B.R. 436, 442 (B.A.P. 9th Cir. 2004).

As long as the debtor can demonstrate some circumstance that makes it unlikely that she will be able to pay her student loans for a significant portion of the repayment period, the second prong of the *Brunner* test has been satisfied. *Chime*, 296 B.R. at 445; *Alderete v. Educational Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1205 (10th Cir. 2005). Implicit in this requirement is that the debtor's financial state be the result of events which are clearly out of the debtor's control. *Kirchhofer v. Direct Loans (In re Kirchhofer)*, 278 B.R. 162, 167 (Bankr. N.D. Ohio 2002). Thus, the debtor must establish that she has taken all steps possible to improve her financial situation. *Id.* This requirement thus gives effect to the clear congressional intent – exhibited by the use of the word "undue" in § 523(a)(8) – that a student loan obligation be more difficult to discharge than that of other nonexcepted debts. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1088-89 (9th Cir. 2001).

In this case, Plaintiff is working full time in her chosen field of study. There is no evidence that she possesses more lucrative job skills. In the Complaint, Plaintiff alleges, and thus established through Defendant's default, that she expects only cost of living increases throughout her teaching career and that she has maximized her income. Indeed, she has taken steps to improve her financial situation by seeking and obtaining additional jobs within the school system to supplement her teacher's salary. Although Plaintiff does anticipate receiving cost-of-living raises to the extent that the school system can afford such increases, as one court explained, "[c]ost-of-living raises are by definition tied to increased living expenses and designed to maintain the status quo. Therefore, they will not generate future income [that] will enable the Debtor to repay [her] Student Loans." *Lebovits v. Chase Manhattan Bank (In re Lebovits)*, 223 B.R.

10

265, 274 (Bankr. E.D.N.Y. 1998); *accord Yapuncich v. Montana Guaranteed Student Loan Program (In re Yapuncich)*, 266 B.R. 882, 892-93 (Bankr. D. MT. 2001). These facts, given the lack of any evidence to the contrary, indicate that Plaintiff's financial circumstances are not likely to improve in the foreseeable future. This, together with the substantial amount due on her student loan debt and the rate at which interest is accruing, are additional circumstances that indicate more than simply a present inability to fulfill her repayment obligations. *See Oyler,* 397 F.3d at 385 (specifically identifying the size of the debt and the rate at which interest is accruing as factors for courts to consider in analyzing undue hardship). The court finds that Plaintiff has met her burden of showing that her financial situation is more than a temporary state of affairs.

## IV. Third Prong of *Brunner* Test

Under the third prong, a debtor must demonstrate that she has made a good faith effort to repay the loans. The good faith requirement does not mandate that payments must have been made when the debtor's circumstances made such payment impossible. *See Alston v. U.S. Dept. of Educ. (In re Alston)*, 297 B.R. 410, 414 (Bankr. E.D. Pa. 2003); *Grove v. Educ. Credit Mgmt. Corp. (In re Grove),* 323 B.R. 216, 226 (Bankr. N.D. Ohio 2005). Rather, the inquiry "should focus on questions surrounding the legitimacy of the basis for seeking a discharge." *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1206 (10th Cir. 2005). As one court explained, the good faith standard is really a question of overall good faith in regard to the student loan, and the good faith analysis is driven by the totality of the circumstances. *Afflitto v. United States (In re Afflitto)*, 273 B.R. 162, 171 (Bankr. W.D. Tenn. 2001).

Plaintiff made her monthly student loan payments for two years while still living in her parent's home. Thereafter, while living independently, she has maintained contact with Defendant with respect to her loans and obtained a three-month deferral in making her payments. However, interest continued to accrue during that time and, at the end of the three months, her monthly payment was increased by $29. Plaintiff has been in repeated contact with Defendant in an attempt to work out a payment plan that she could afford. Her efforts, however, have been unsuccessful. As her loans are private loans that are not held by the Secretary of Education or guaranteed under any federal program, she is not eligible to participate in programs such as the income contingent repayment or income based repayment programs. *See Foust v. The Education Resources Institute (In re Foust)*, 342 B.R. 384 (Table), 2006 WL 751383, *3, 2006 Bankr. LEXIS 410, *18 (B.A.P. 6th Cir. March 24, 2006) (stating that loans that were neither government subsidized nor insured by the United States Department of Education were not eligible for the income

11

contingent repayment program). Thus, she filed for bankruptcy relief in order to address an otherwise ballooning debt and to be able to pay what she can afford, not to avoid payment altogether.

Plaintiff's inability to repay the entire amount of her student loan debt is not the result of any factor reasonably within her control. She has taken steps to maximize her income by seeking additional positions within the Swanton school system. And her budget shows no excesses that could otherwise be applied to pay her student loan debt.

This also is not a case, about which Congress has expressed particular concern, where a debtor attempts to absolve herself of the obligation to repay her student loans shortly after completing her schooling while the prospect of the increased financial benefits of the education are just over the horizon. While Plaintiff's loans were incurred just over four years ago, she has been employed in her field of study for two years. The allegations in the Complaint and the evidence in this case do not indicate a likelihood of increased financial benefits just over the horizon. Rather, as discussed above, the record establishes that only cost-of-living increases are anticipated. Accordingly, the court finds that Plaintiff has demonstrated good faith.

## V. Equitable Adjustment of Plaintiff's Student Loan Debt under § 105(a)

In light of the foregoing discussion, the court finds that Plaintiff has met her burden of demonstrating an undue hardship under § 523(a)(8) with respect to only a portion of her student loan debt. Relying on the principles set forth in *Miller* and *Hornsby*, the court finds that equitable adjustment of Plaintiff's student loan debt is, therefore, appropriate. In fashioning an appropriate equitable remedy, the court is guided by the broad directive of the Sixth Circuit in *Hornsby* and *Miller* to afford Plaintiff a financial fresh start while holding her accountable for the portion of the cost of her education that she can repay and still maintain a basic standard of living. In that regard, the court has already determined that a monthly payment of $350 would not render Plaintiff unable to maintain a basic standard of living. And in light of Plaintiff's age and employment status, the court finds it reasonable to expect her to continue to pay on her student loan debt for thirty-five years. Plaintiff's student loan debt is accruing interest at a rate of 9.04%. At that rate of interest, four hundred twenty payments at $350.21 per month will retire a total debt of $44,500. However, Plaintiff owes Defendant a total of $93,776. The court finds it appropriate, therefore, to discharge all amounts owed by Plaintiff that exceed $44,500.

Nothing herein shall be construed to prevent the parties from negotiating other agreed upon repayment terms for the nondischargeable portion of the debt or to prevent Defendant from exercising upon any future default any collection remedies as to the nondischargeable balance due that it may possess under

12

applicable law.

## CONCLUSION

Plaintiff has failed to prove that it would be an undue hardship to repay any portion of her student loan debt but has shown that it would be an undue hardship to repay the total amount due. Therefore, in the exercise of the court's equitable discretion under 11 U.S.C. § 105(a), and pursuant to Fed. R. Civ. P. 55, made applicable by Fed. R. Bankr. P. 7055, Plaintiff's Motion for Default Judgment [Doc. # 9] will be **GRANTED** as follows: all amounts owed to Defendant in excess of $44,500 shall be discharged. The remaining nondischargeable debt shall be repaid at 9.04% interest over thirty-five years, with a minimum payment of $350.21 per month. The court will enter a separate final judgment in accordance with this Memorandum of Decision.

**IT IS SO ORDERED.**